IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Ruben Romano                        08-634-AJS

         Plaintiff

v.

Williams & Fudge, Inc.

         Defendant.                    JURY TRIAL DEMANDED

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### THE TELEPHONE CONVERSATION VIOLATED THE FDCPA

W&A argues the FDCPA wasn't violated because Richard Edkins "only provided basic information to determine whether the call recipient was Plaintiff." (See Defendant's Memorandum in Support of Motion for Summary Judgment, pg. 7.) W&A also argues Edkins disclosed he was a debt collector attempting to collect a debt after the recipient of the call stated he was Reuben Romano. (Id).

The facts don't support W&A's arguments. Edkins disclosed the debt before the recipient of the call claimed to be Reuben Romano.

Edkins placed a telephone call to what he believed was Reuben's place of employment. The recipient of the call answered, "Hello." Edkins then asked if Reuben was there. The recipient answered truthfully, "Yeah, this is him."[1] Edkins responded, "Hi, Ruben Romano. My name is Rick. I'm calling from Williams & Fudge, on behalf

---

[1] Reuben's father's name is Ruben Lee. (Romano depo pg 9:21-23).

1

of Duquesne University and I'm calling today regarding an attempt to collect a debt. This call is recorded for quality assurance."

It wasn't until after this disclosure that Edkins asked the recipient if he was, "Mr. Ruben J. Romano?" The recipient said, "Yeah." He then asked the recipient to confirm the last four digits of the Plaintiff's social security number. The recipient then acknowledged he wasn't the Plaintiff. (Transcript of March 31, 2008 telephone recording attached to W&F's Memo in Support of Motion for S.J. as Exhibit C).

By the time the recipient claimed to be the Plaintiff, the damage was done. The purpose of the call, i.e. to collect a debt from the Plaintiff, was disclosed to an unauthorized third party in violation of 15 U.S.C. § 1692c(b).

## BONA FIDE ERROR DEFENSE

W&A argues in the alternative that it is not liable under the FDCPA because the violation, if any, resulted from a bona fide error. The defense doesn't apply in this case for three reasons. First, W&A didn't implement its alleged policy/procedure. Second, the alleged policy/procedure is not reasonably adapted to avoid the error at issue. Third, the error isn't bona fide.

The bona fide error defense is a narrow exception to the rule that the FDCPA is a strict liability statute and does not require proof of intent. Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162, 1177 (9th Cir. 2006); Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991 (7th Cir. 2003). It is an affirmative defense and the collector bears the burden of proving the defense by a preponderance of the evidence. Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162, 1177 (9th Cir. 2006); Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991 (7th Cir. 2003); Fox v. Citicorp Credit Servs.,

2

Inc., 15 F.3d 1507 (9th Cir. 1994). Whether the defense has been met is typically a question of fact. McDaniel v. South & Assocs., P.C., 325 F. Supp. 2d 1210 (D. Kan. 2004) (whether collector's computerized case management system was reasonably adapted to avoid collection action after notice of a dispute, and whether the continued collection was a clerical error, were questions of fact for the jury); Teemogonwuno v. Todd, Bremer & Larsen, Inc., 1991 U.S. Dist. LEXIS 21720 (N.D. Ga. June 13, 1991) (bona fide error defense required trial).

To establish the defense a defendant has to prove by a preponderance of evidence that (1) the violation of the FDCPA was unintentional, (2) the FDCPA violation was due to an underlying bona fide error, and (3) the bona fide error occurred despite maintenance of procedures reasonably adapted to avoid any such error. 15 U.S.C. § 1692k(c); see also Richburg v. Palisades Collection LLC, 247 F.R.D. 457 (E.D. Pa. 2008) citing Beck v. Maximus, Inc., 457 F. 3d 291, 297-98 (3d Cir. 2006) (citing Johnson v. Riddle, 443 F.3d 723, 727-28 (10th Cir. 2006) and Kort v. Diversified Collection Services, Inc., 394 F. 3d 530, 537 (7th Cir. 2005)). The collector must meet each of these elements of the defense, which are separate tests, although they blur together and overlap in some circumstances. Johnson v. Riddle, 443 F.3d 723 (10th Cir. 2006).

The first prong of this defense is a subjective test that requires a credibility determination concerning the debt collector's assertions that the ensuing FDCPA violation was unintentional. Johnson, 443 F.3d at 728-29. The second and third prongs are objective and require the defendant to establish that the underlying error leading to the FDCPA violation was bona fide and that the defendant maintained reasonable procedures designed to avoid such an error. Johnson, 443 F.3d at 729.

To assess whether the defendant's procedures satisfy the second and third prongs obliges the Court to inquire whether any precautions were **actually implemented** and whether such precautions "were reasonably adapted to avoid the specific error at issue." Id. (internal quotations omitted) (emphasis added).

The only evidence offered of any procedure undertaken by W&A to avoid the error in the present case is the deposition testimony of Clay Goodyear, in which he states: "[C]ollectors are instructed to confirm the name of the consumer, and if a call recipient appears hesitant or uncertain about the account, the collector should use additional identifying information to confirm that the recipient is the consumer." (Richard Goodyear's depo transcript at p 14-15 attached to W&F's Memo in Support of Motion for S.J. as Exhibit D).

### W&F Did Not Maintain Reasonable Procedures

Even if the collector has shown that a violation was unintentional and a bona fide error, to prevail on the defense it must introduce evidence to meet its burden of showing that the collector had in place reasonable procedures to avoid such errors. Fox v. Citicorp Credit Servs., Inc., 15 F.3d 1507 (9th Cir. 1994); Allen v. NCO Fin. Servs., Inc., 2002 U.S. Dist. LEXIS 10513 (N.D. Ill. June 10, 2002) (no bona fide error defense where defendant produced no documents or affidavits of the procedures in place to avoid computer errors). The reasonableness of procedures is generally a question of fact for the jury. Johnson v. Riddle, 443 F.3d 723 (10th Cir. 2006); Gill v. Kostroff, 82 F. Supp. 2d 1354 (M.D. Fla. 2000) (whether defendant attorney had reasonable procedures to avoid suing the wrong consumer, a victim of identity theft, in the wrong venue was issue

of fact for the jury and inappropriate for summary judgment); Narwick v. Wexler, 901 F. Supp. 1275 (N.D. Ill. 1995).

The procedures must be designed to avoid the type of error that actually occurred. Johnson v. Riddle, 443 F.3d 723 (10th Cir. 2006) (procedures to avoid clerical errors not reasonably adapted to prevent legal errors). The Tenth Circuit, in Johnson v. Riddle, specifically addressed the requirement that the procedures be adapted to avoid the error: "As the text of § 1692k(c) indicates, the procedures component of the bona fide error defense involves a two-step inquiry: first, whether the debt collector 'maintained' – i.e., actually employed or implemented – procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue." 443 F.3d 723, 729 (10th Cir. 2006).

### *W&A Did Not Implement Procedures to Avoid the Error in Question*

W&A does not have any written policies concerning the steps a collector must take upon initiating a phone call in order to determine prior to discussing the debt whether the individual with whom the collector is speaking is the debtor. (Edkins depo pp 41:2—25; 42:1). W&A relies on the deposition testimony of Clay Goodyear. W&A contends this unwritten policy is provided to its collectors during training. However, Edkins doesn't recall if W&F ever told him what he is supposed to do in order to verify that he is speaking with the debtor and not an unauthorized third party. (Edkins depo pp 47: 14-23; 49: 14-25). Edkins is confused as to what he is supposed to do. He isn't sure if W&F requires its collectors to verify birth date, social security number, where the individual attended school or an address before disclosing the call is in reference to a debt. (Edkins depo pp 61: 24-25; 62:1-5). Edkins doesn't recall if W&F requires its

5

collectors to verify by other identifiable information, other than merely using a name. (Edkins depo pg 68: 15-19). Edkins isn't the only one that is confused. Bob Duenkel testified there isn't a requirement to ask for additional identifying information under any scenario. (Duenkel depo pp 35: 20-25; 36: 1-9; 39: 20-25; 40:1). This is inconsistent with the deposition testimony of Mr. Goodyear.

### *The Procedure is Not Reasonably Adapted to Avoid the Error at Issue*

Under W&A's alleged policy, the alleged defaulted account is discussed with the recipient of the call before the collector gets wind that the recipient appears hesitant or uncertain about the account. The policy in place actually encourages the collector to break the law. According to Goodyear's testimony, collectors are to confirm the name of the consumer. As soon as this is accomplished, the collector can discuss the account. What happens if the recipient of the call becomes hesitant or uncertain after the account is discussed? By that point in time, the cat is out of the bag. That is precisely what happened in this case.

In addition, a jury could find that when a debt collector calls what he or she believes to be the consumer's place of employment[2], the collector should request additional identifiers as opposed to merely having the recipient confirm his or her name. The additional identifiers could include the last four digits of a social, the debtor's birth date or address. A bank will not give out information over the phone unless the caller can identify his or her social, password or a pin number. The bank wants to protect the

---

[2] Edkins believed he called the Plaintiff's place of employment on March 31, 2008. (Edkins depo pg 97: 1-7; Duenkel depo pg 26: 5-8).

privacy of its customers. Even though an alleged debtor isn't a debt collector's customer, the same privacy concerns still apply.[3]

### The Error Wasn't Bona Fide

An error is bona fide if it is made in good faith and is a genuine mistake as opposed to a contrived mistake. Kort v. Diversified Collection Serv., 394 F.3d 530 (7th Cir. 2005) (quoting *Black's Law Dictionary*). The bona fide test is an objective test, which asks if the error is a reasonable one, regardless of the collector's subjective intent. Johnson v. Riddle, 443 F.3d 723 (10th Cir. 2006). *See* Edwards v. McCormick, 136 F. Supp. 2d 795 (S.D. Ohio 2001) (accepting that collector did not intend to send letter threatening foreclosure to consumer debtor but finding the error was not bona fide because the collector never files foreclosures, knew that state law forbids a debt collector from foreclosing on a homestead, signed the letter, and the court surmised that he must not have read the letter before signing it).

The error in this case, i.e. disclosing an alleged debt to an unauthorized third party, was not reasonable because Edkins failed to read the account notes before placing the call. (Edkins depo pg 109: 1-4). In addition, Edkins didn't do anything to confirm that the contact information or the number he was calling was correct.

If he read the account notes he would have known the following:

- Reuben Romano J, Junior was the name provided (Duenkel depo pg 8: 9-13)
- Plaintiff's address was listed in Carnegie, PA (Edkins depo pg 80: 12-19; Perrin depo pp 12: 9-14; 14:8-13)

---

[3] There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of personal privacy. 15 U.S.C. § 1692(a).

- W&A sent a letter to the Plaintiff to an address in North Canton, OH (Edkins depo pp 108: 19-25; 109: 1-4)
- The account contained three addresses; two in Ohio and one in PA (Duenkel depo pp 12: 12-25; 13: 1-25; 14: 1-2)
- The account contained a home phone number with a 419 area code and a work phone number with a 614 area code (Edkins depo pg 110: 22-25)
- The account notes state that two relative phone numbers were found. (Duenkel depo pg 64: 3-12).

Despite the inconsistent contact information, Edkins didn't contact the client, in this case Duquesne University. (Edkins depo pg 78: 6-15). He didn't pull the Plaintiff's credit report. (Edkins depo pg 6:15). He didn't bother to do his own skip tracing. Nor did he perform a google reverse number search or check the white pages. (Edkins depo pp 122: 9-25; 123: 1-6). Edkins wasn't worried or doesn't recall if he was concerned that someone other than the Plaintiff would answer the phone even though he was calling what he believed was the Plaintiff's place of employment. (Edkins depo pg 114: 16-23).

Edkins should have realized that W&F had no idea where Reuben was living or working. He should have taken precautions to confirm whom he was speaking with before disclosing the alleged debt. Based on all of this information, a collector should realize that the contact information might not be correct and thus realize the possibility that the number called could be wrong.

## CONCLUSION

W&F is not entitled to judgment as a matter of law with respect to whether it violated the FDCPA. W&F disclosed the Plaintiff's alleged debt to an unauthorized

third party in violation of 15 U.S.C. § 1692c(b). This fact isn't in dispute in light of the recording of the subject telephone call.

There are genuine issues of material fact regarding the bona fide error defense. First, does the policy even exist? There are no written documents, which confirm or set forth the policy. Second, there are questions as to whether the policy is implemented. Edkins doesn't recall if he was ever advised of the policy. Edkins is confused as to what the policy actually is. The testimony between Goodyear and Duenkel regarding the policy is inconsistent. Edkins isn't aware of any type of disciplinary policy. What good is a policy if there isn't a consequence for violating it? Third, a jury could reasonably conclude that the policy isn't reasonably adapted to avoid the error in question. Fourth, because of the inconsistent contact information and lack of trying to confirm or verify the information on the part of Edkins, a jury could reasonably conclude that the error wasn't reasonable and therefore, not bona fide.

Respectfully Submitted,

/s/ Jeffrey L. Suher
Jeffrey L. Suher, Esquire
Attorney for Plaintiff
Pa. I.D. # 74924
4328 Old Wm. Penn Hwy, Ste 2J
Monroeville, PA 15146
(412) 374-9005
(412) 374-0799 (fax)
lawfirm@jeffcanhelp.com