IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RUBEN ROMANO,

    Plaintiff,

v.

WILLIAMS & FUDGE, INC.,

    Defendant.

08cv0634
**ELECTRONICALLY FILED**

## Memorandum Opinion on Summary Judgment

### I. Introduction

This is an action for violation of the Fair Debt Collection Practices Act (FDCPA) pursuant to 15 U.S.C. § 1692. Plaintiff, Reuben Romano, alleges that defendant, Williams & Fudge, Inc., violated 15 U.S.C. § 1692c(b), when it contacted by telephone plaintiff's estranged father about a debt plaintiff allegedly owed and left a message with him. Defendant denies those assertions and argues that the telephone conversation did not violate the FDCPA and that any violation was an unintentional bona fide error pursuant to 15 U.S.C. § 1692k(c). Pending before this Court is plaintiff's motion for partial summary judgment on liability (doc. no. 35) and defendant's motion for summary judgment (doc. no. 39). The Court finds that defendant violated the FDCPA as a matter of law, and therefore will grant partial summary judgment in favor of plaintiff for violations of the FDCPA, and the Court will deny defendant's motion for summary judgment in its entirety.

## II. Summary Judgment Standards

"Rule 56 of the Federal Rules of Civil Procedure 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. Sch. Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), quoting *Foehl v. United States*, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof."), citing *Anderson* and *Celotex Corp.*.

In deciding a summary judgment motion, a court must view the facts in the light most favorable to, draw all reasonable inferences, and resolve all doubts, in favor of the non-moving party. *Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001); *Woodside*, 248 F.3d at 130; *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir. 1999). Further, the court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers*,

*Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998), quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

**III.     Background Facts**

Defendant alleges that plaintiff incurred a debt within the FDCPA, namely tuition owed to Duquesne University. Defendant operates a debt collection agency within the FDCPA. While defendant contends that Duquesne's placement information indicated that the alleged debtors name was Reuben J. Romano, plaintiff denies that contention and states that defendant's account notes indicate his name is Reuben J. Romano, Jr., and further denies that he had a delinquent account. In any event, on March 31, 2008, Richard Edkins, a collector with defendant, telephoned a phone number obtained through skip tracing, which turned out to be plaintiff's estranged father and disclosed plaintiff's alleged debt to plaintiff's father. Edkins left a message with plaintiff's father asking him "[I]f you do hear from him, just let him know that we're trying to get in touch with him." The transcript of the phone call between plaintiff's estranged father and Edkins is as follows:

(4:39 minute recording)
\* \* \*
MR. ROMANO: Hello.
MR. EDKINS: Yeah, hi. Is Ruben there,
please?
MR. ROMANO: Yeah, this is him.
MR. EDKINS: Hi, Ruben Romano. My name
is Rick. I'm calling from Williams & Fudge, on behalf
of Duquesne University and I'm calling today regarding
an attempt to collect a debt. This call is recorded
for quality assurance.
MR. ROMANO: Do what?
MR. EDKINS: I'm calling from Williams
& Fudge.
Did you go to Duquesne University?

MR. ROMANO: Hold on. Wait a minute. One second. (Pause) All righty. Now, what's -- now what's going on?

MR. EDKINS: Okay. And You're Mr. Ruben J. Romano?

MR. ROMANO: Yeah.

MR. EDKINS: Okay. All right. I'm calling from Williams & Fudge on behalf of Duquesne University. And they've just recently given us this account that was billed on -- for $418.27.

MR. ROMANO: Oh, $18.

MR. EDKINS: $418.27.

MR. ROMANO: $418.27.

MR. EDKINS: Yes, sir.

MR. ROMANO: And what -- and -- and this is from --

MR. EDKINS: Duquesne University.

MR. ROMANO: Duquesne?

MR. EDKINS: Yes, sir.

MR. ROMANO: Duquesne University. Okay. And when was this?

MR. EDKINS: They just sent it to us on -- I think this is on 3/21. Could be some tuition and fees. Could be some type of student account.

MR. ROMANO: And what's -- what -- where's these -- what was this for?

MR. EDKINS: It could be, like I said, for tuition and fees, a student account, some type balance that was owed maybe to the -- you know, the library, the bookstore, anything such as that. What happens is, they just sent it to us saying there is an outstanding balance and their attempt to collect it of $418.27.

MR. ROMANO: And where is Duquesne? Where is -- now wait a minute. Duquesne University?

MR. EDKINS: Does your Social Security number end in 5-0-5-3?

MR. ROMANO: Go ahead. 5 -- what?

MR. EDKINS: 5-0-5-3? Is that your Social Security number, the last four numbers?

MR. ROMANO: 5-0-5-3. Okay. I'm going to tell you what this is.

MR. EDKINS: Go ahead, sir.

MR. ROMANO: I'm Senior.
MR. EDKINS: Ah-huh. I apologize for that.
MR. ROMANO: No problem.
MR. EDKINS: Okay. Do you know where we can reach -- is it Junior or the Second?
MR. ROMANO: Let's see -- it's a Junior.
MR. EDKINS: Okay. Let me try and document the account. This is a number that was given to us as a contact number.
MR. ROMANO: Excuse me?
MR. EDKINS: This was the number --
MR. ROMANO: How would this number -- how would this number be getting --
MR. EDKINS: It's the number that was given to us from -- he might have used this number as Emergency contact number --
MR. ROMANO: Yeah, he couldn't --
MR. EDKINS: -- going to Duquesne.
MR. ROMANO: No, he couldn't -- never used this number.
MR. EDKINS: Okay. I have another number for him, but I didn't hear -- it didn't even ring --
MR. ROMANO: Huh?
MR. EDKINS: I have another number that I tried to call him on, but it wouldn't ring. It just was -- kind of went dead --
MR. ROMANO: Okay. What number -- what was that number?
MR. EDKINS: That was 419-389-1043.
MR. ROMANO: 4-1-9-what?
MR. EDKINS: 3-8-9.
MR. ROMANO: 3-8-9.
MR. EDKINS: 1-0-4-3.
MR. ROMANO: 1-0-4-3. Yeah, that's -- okay. What? You didn't get no number -- no answer at that number?
MR. EDKINS: It would just ring and there was nothing, so I don't know -- so is that a good number for him?
MR. ROMANO: Yeah.

MR. EDKINS: Okay.
419-389-1043.
MR. ROMANO: 389-1043.
MR. EDKINS: Yes. Area code was 419.
MR. ROMANO: 419. Right.
MR. EDKINS: Okay. I don't know why it did that. I can try it back and see.
Do you see your son or hear from him?
MR. ROMANO: Well, I haven't heard from him in years. Now, that's what I'm saying.
MR. EDKINS: Okay. I caught you by surprise, didn't I?
MR. ROMANO: Right. I'm wondering you saying Duquesne University. I'm saying like, now wait a minute. (Laugh)
MR. EDKINS: So you haven't spoken to him in a while?
MR. ROMANO: Nah.
MR. EDKINS: Okay.
MR. ROMANO: Yes, it's been a few -- well, talked to him off and on, but for a few years, as far as him going to school and all that.
MR. EDKINS: Yeah, it could be back aways, but, again, I don't have the documents. But I apologize for, you know --
MR. ROMANO: Ah, no -- no problem. I appreciate you calling.
MR. EDKINS: There's no indication. It could have been a Junior or Senior, so --
MR. ROMANO: Right. Right.
MR. EDKINS: But, what I'll do, if you do hear from him, just let him know that we're trying to get in touch with him.
MR. ROMANO: Okay. Fine. And this is from -- what's your office name?
MR. EDKINS: Williams & Fudge.
MR. ROMANO: Okay. All righty, then.
MR. EDKINS: I appreciate it.
MR. ROMANO: Thank you, buddy.
MR. EDKINS: Thank you. Bye-bye.

(Doc. No. 46, at 2-5).

Bob Duenkel (Duenkel), who supervised Edkins, also left a message on plaintiff's answering machine. Duenkel did not identify himself as a debt collector in the message left on plaintiff's answering machine.

The parties dispute several facts regarding the amount and type of training received by employees of defendant, and the existence of written policies or protocols to ensure compliance with the FDCPA.

## IV.  Discussion

Plaintiff asserts that defendant violated the FDCPA in three respects. First, plaintiff alleges that defendant violated the 15 U.S.C. § 1692b(2), when Edkins disclosed plaintiff's alleged debt to his father. Second, plaintiff alleges that when Edkins left a message with plaintiff's father and indirectly communicated information relating to plaintiff's alleged debt to an unauthorized party, he violated 15 U.S.C. § 1692c(b). Third, plaintiff contends that defendant violated 15 U.S.C. § 1692e(11) when Duenkel failed to identify himself as a debt collector in a message left on plaintiff's answering machine.

### (1) Violation of 15 U.S.C. § 1692b(2)

15 U.S.C. § 1692b(2) states that, "any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall . . . (2) not state that such consumer owes any debt." Here, as the above transcribed conversation illustrates, Edkins communicated with plaintiff's estranged father and informed him that plaintiff owed a debt. Judging the facts in the light most favorable to the non-moving party, and recognizing that the FDCPA is a strict liability statute and is remedial in nature, the Court finds that defendant violated 15 U.S.C. § 1692b(2) as a matter of law. *Brown v. Card Serv. Ctr.,*

2006 WL 2788476 (3d Cir. September 29, 2006)(language of FDCPA is construed broadly so as to effectuate its remedial purpose); *see also Russell v. Equifax, A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996)(the FDCPA imposes strict liability).

### (2) Violation of 15 U.S.C. § 1692c(b)

15 U.S.C. § 1692c(b), states as follows:

(b) Communications with third parties

Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, **a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer**, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

(Emphasis added).

Judging the facts in the light most favorable to the non-moving party, the Court finds that defendant violated 15 U.S.C. § 1692c(b) as a matter of law. Here, as the above transcribed conversation indicates, the debt collector (Edkins) communicated information in connection with the collection of plaintiff's alleged debt to a person other than the consumer (in this case plaintiff's estranged father) and he disclosed alleged debt information to plaintiff's father. Accordingly, a violation of Section 1692c(b) has occurred as a matter of law. *See West v. Nationwide Credit, Inc*. 998 F. Supp. 642 (W.D. N.C. 1998)(a complaint alleging that debt collector telephoned plaintiff's neighbor leaving collector's name and telephone number and asking the neighbor to have plaintiff return call stated a claim for violation of Section 1692c(b)).

### (3) Violation of 15 U.S.C. § 1692(11)

Section 1692(11) of Title 15 of the United States Code requires the debt collector to

disclose in the initial oral communication that the debt collector is attempting to collect a debt and any information obtained will be used to collect the debt. Section 1692(11) further requires disclosure that it is a debt collector in subsequent communications. Here, when Duenkel left a message on plaintiff's answering machine and failed to identify himself as a debt collector, defendant again violated Section 1692(11) as a matter of law. *Leyse v. Corporate Collection Servcs*, Inc. 2006 WL 2708451 (S.D.N.Y. September 18, 2006).

### (4) Affirmative Defense of Bona Fide Error under 15 U.S.C. § 1692k(c)

Having ruled that defendant violated the FDCPA in three separate ways as a matter of law, the only question that remains for purposes of these summary judgment motions is whether defendant has proven that the violation was not intentional and resulted from a bona fide error under Section 1692k(c).

Section 1692k(c), entitled "Civil Liability," states as follows:

**(c) Intent**

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error.

While defendant alleges that it had proper procedures and training protocols in place to avoid such errors and moves for summary judgment on this basis, plaintiff disputes those factual contentions. There remains genuine issues of material fact surrounding what policies and procedures existed to avoid such errors and whether the policies and procedures in place were sufficient under the circumstances of this case. These genuine disputes of material fact must be submitted to a jury to determine whether defendant can prove by a preponderance of the evidence

9

that its error was a bona fide error and whether the violation was not intentional within the meaning of Section 1692k(c).

**V.     Conclusion**

After careful consideration of plaintiff's motion for partial summary judgment as to liability only (doc. no. 35) and defendant's motion for summary judgment (doc. no. 39), this Court will grant plaintiff's motion (doc. no. 35) to the extent that defendant violated the FDCPA as a matter of law.  The Court will deny defendant's motion for summary judgment (doc. no. 39). Genuine issues of material fact exist regarding whether defendant's violations of the FDCPA were not intentional *and* whether the violations resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such errors.  Defendant has the burden of proving the applicability of the bona fide error defense by a preponderance of the evidence at trial, and should defendant fail to do so, the jury then will consider what damages, if any, to which plaintiff is entitled under the FDCPA.

An appropriate order follows.

SO ORDERED this 2nd day of December, 2008.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge